IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| 600 MARSHALL ENTERTAINMENT CONCEPTS, LLC, d/b/a THE SPOT, | ) ) ) | |
| Petitioner, | ) ) | |
| V. | ) ) | No. 05-02865-D |
| THE CITY OF MEMPHIS, | ) ) | |
| Respondent. | ) | |

ORDER DENYING REQUEST FOR PRELIMINARY INJUNCTION

This matter is before the Court pursuant to Petitioner's request for preliminary injunctive relief, pursuant to Fed. R. Civ. P. 65(a), during the pendency of this litigation. This action is by all appearances an appeal of adverse decisions of Respondent's administrative authorities to revoke and continue to deny Petitioner a "Compensated Dance Permit" which was initially granted upon Petitioner's application for the permit. Pursuant to Tenn. Code Ann. § 27-9-111, Petitioner sought judicial review of the administrative denial of the permit in the Chancery Court of Shelby County, filing his "Petition For Writ Of Certiorari And Supersedeas, Money Damages, Declaratory And Injunctive Releif [sic]" ("petition") on November 17, 2005. Claims of constitutional and civil rights violations predominate the petition. On November 28, 2005, Respondent removed the action to this Court pursuant to 28 U.S.C. §§ 1441 and 1443. On December 1, Petitioner filed his "First Amended Petition For Writ Of Certiorari And Supersedeas, Money Damages, Declaratory And Injunctive Releif [sic]" ("amended

petition"). A hearing was held on Petitioner's request for preliminary injunctive relief on December 16, wherein the Court heard arguments, witness testimony, and received exhibits into evidence.

A preliminary injunction is an extraordinary remedy requiring the party seeking such relief to demonstrate a clear entitlement to the injunction under the given circumstances. Overstreet v. Lexington - Fayette Urban County Gov., 305 F.3d 566, 573 (6th Cir. 2002). In determining whether a party is entitled to a preliminary injunction, the Court must consider: 1) whether the movant has demonstrated a substantial likelihood of success on the merits of the underlying claims; 2) whether the movant will suffer irreparable harm if the injunction is not issued; 3) whether the issuance of the injunction will cause substantial harm to others if issued; and 4) whether the public interest is served by issuance of the injunction. Id. "These factors are not prerequisites, but are factors that are to be balanced against each other." Id. The first inquiry, whether the movant has demonstrated a likelihood of success on the merits, is often determinative of whether the injunction will issue, particularly in cases which, like this matter, substantially implicate First Amendment concerns. Deja Vu of Nashville, Inc. v. Metro. Gov. of Nashville, 274 F.3d 377, 400 (6th Cir. 2001). Thus, the Court will first assess whether Petitioner has demonstrated a substantial likelihood of success on the merits of the claims raised in its petition.

## II.  SUPPOSITIONS AND FINDINGS OF FACT

It appears to the Court that Petitioner is the lessee or proprietor, though not the owner, of the premises located at 600 and 616 Marshall in Memphis, Tennessee ("600 Marshall").  It further appears that 600 Marshall has been operated variously as a bar, club, or other similar facility since at least the 1970s, however Petitioner, as current occupier of 600 Marshall, has not yet operated a business in the facility.  On August 15, 2005, Charles Gerald Westlund, on behalf of Petitioner, applied for a "Compensated Dance Permit" through the City's permit office.  The compensated dance permit is required of any facility that wishes to both sell beer and feature dancing performers whom are to be compensated either directly by the management of the facility or indirectly by patrons.  Additionally, it appears that the City's ordinary practice is that applicants requesting the compensated dance permit intend to provide "adult entertainment," and therefore the permit office generally subjects the permit applicants to the city's prevailing criteria for the provision of "adult entertainment."  In this instance, that involved ensuring whether Petitioner's proposed business would be located in an area zoned for "adult entertainment."  On its dance permit application Petitioner indicated both that it would likely feature "adult entertainment" and that it would feature dancers receiving compensation.  On September 16, 2005, Petitioner was issued the permit pursuant to its application.  Shortly thereafter, on September 26, the City's permit office informed Petitioner by letter that it was reviewing whether the dance permit was granted

in error. On October 4, the permit office sent Petitioner a letter revoking the permit. The reason given for the revocation was that, upon further review, the City had determined that 600 Marshall was within a zoning district where "adult entertainment" was not permitted.

There appears to be no dispute that 600 Marshall is located within a zoning district referred to as the Central Business District ("CBD"). The CBD was created, effective in 1981, by city ordinance. It appears to the Court that "adult entertainment" was permitted in the CBD, provided that a valid certificate of use and occupancy and other required permits were maintained by the facility. In 1993, however, Memphis and Shelby County issued Joint Ordinance No. 4209, which deleted the provision of "adult entertainment" as one of the permitted uses in the CBD. Thus, subsequent to 1993, "adult entertainment" has not been permitted in the CBD pursuant to Memphis and Shelby County ordinance code.

Petitioner availed itself of the City's administrative channels to seek review of the denial/revocation of the compensated dance permit. A panel designated by the City's Director of Police Services heard Petitioner's appeal and ultimately found that the permit had been "wrongfully revoked and that the permit should be reissued immediately conditioned on prohibition of any adult entertainment . . . unless and until the Petitioner receives the proper approvals from the Building Official." Exhibit 5, Finding On Appeal Of Revocation Of Compensated Dance Permit at 2, ¶ 5. However, the panel's findings and recommendations were not accepted by the Director, who, apparently unilaterally, denied the

application. Petitioner instituted this action subsequent to the panel hearing, but prior to the Director's ultimate decision on the appeal.

### III. ANALYSIS

#### A. State and Local Law Concerning Non-conforming Uses

The circumstances of this case require the Court to examine state law as a threshold to any determination that Petitioner has demonstrated a likelihood of success on the merits of its federal claims. In other words, the Court is forced to make a preliminary determination, under state and local law, whether Petitioner is entitled to operate the facility as it has indicated, for the provision of "adult entertainment," such that the suppression of its right to so operate the facility amounts to a violation of its First Amendment and due process rights. Pursuant to 28 U.S.C. § 1441(c), the Court may exercise jurisdiction over state law claims raised in the Petition. Thus, because the linchpin of Petitioner's federal claims require a prior determination under state and local law, the Court will first consider Petitioner's request for declaratory relief, which reads as follows:

> 31. Further Petitioner alleges that the use described, if it were a preexisting non-conforming use, is "grandfathered" since the use was not abandoned terminated or discontinued for 365 consecutive days.
>
> 32. Petitioner request this Court to review the facts regarding such use and declare that this location is a preexisting non-conforming lawful use appropriate for adult entertainment as that is defined by the Zoning Laws.

Amended Petition at eighth unnumbered page, ¶¶ 31 and 32. The issues raised by Petitioner's request for declaratory relief appear

5

to be the primary point of contention between the parties, that is, whether a valid "adult entertainment" usage of the facility predated the 1993 ordinance, and if so, whether that preexisting and non-conforming "adult" use has been maintained since "adult entertainment" was zoned out of the CBD.

Tennessee law broadly protects the property interests of persons whose valid use of their property is subsequently outlawed by way of municipal zoning. See Tenn. Code Ann. § 13-7-208(b)(1). The Memphis and Shelby County zoning ordinances similarly offer protection for non-conforming uses that predate a particular zoning change. See Shelby County Code, Appendix A, Joint Memphis and Shelby County Zoning Ordinances ("Zoning Ordinances"), § 30. In legal parlance these provisions of state and local code are known as "grandfather" clauses. State law places the burden of proving that a non-conforming use should be "grandfathered" on the party asserting such use, and requires the proponent to demonstrate both 1) a change in zoning restrictions, and 2) permitted operation of the business or non-conforming use prior to the change. Lamar Tennessee, LLC v. City of Hendersonville, 171 S.W.3d 831, 836 (Tenn. Ct. App. 2005).

As to the first prong, there can be no doubt that Petitioner has met its burden of proof regarding the change in zoning restrictions. The "zoning change must be significant 'insofar as the plaintiff is concerned'; it required a change in the uses allowed under the zoning code, which change affects the plaintiff's use of his land." Id. at 837 (quoting Rives v. City of Clarksville, 618 S.W.2d 502, 505 (Tenn. Ct. App. 1981)). It is

6

uncontested that the 1993 zoning amendment completely removed "adult entertainment" as a permitted usage within the CBD. Therefore there was a "significant" change in zoning restrictions which affects the Petitioner's intended use of the premises.

Petitioner also bears the burden of proving that establishments using the property for "adult entertainment" prior to the zoning change were permitted. It is clear from this Court's reading of Tennessee case law that Petitioner may not "piggy-back" his intended usage on the illegal usages of previous owners or tenants of the premises. See <u>Coe v. City of Sevierville</u>, 21 S.W.3d 237, 243 (Tenn. Ct. App. 2000)("It is implicit in the law that the "grandfathering clause" of any statute, resolution or ordinance contemplates a lawful activity being conducted which becomes a non-conforming use after passage of a statute, resolution or ordinance."). The mere fact that an area is zoned to allow "adult entertainment" does not mean that any establishment may therefore simply offer such entertainment in any form. Rather, the legal provision of such entertainment still requires applicable permits and other City indicia of approval such as use and occupancy certificates. Petitioner contests this point, steadfastly maintaining that, because there is no "general adult use" permit, any adult usage of the premises is lawful, so long as it does not run afoul of the City's required permitting for compensated dance. However, the City has demonstrated that lawful provision of "adult entertainment" requires a valid certificate of use and occupancy. <u>See</u> Exhibit A of Respondent's Memorandum In Opposition To Temporary Injunction, Affidavit of Allen Medlock at ¶ 2 ("Medlock

7

Affidavit"); Deposition of Larry Jenkins at 35 ("Jenkins Deposition). It is evident that Petitioner comprehends the significance of the use and occupancy requirement, having itself submitted an application for such a certificate which, the Court notes, curiously disclaims that "adult entertainment" will be provided at 600 Marshall. Mr. Medlock, the Administrator/Building Official of the Memphis and Shelby County Office of Construction Code Enforcement, clearly affirms that a use and occupancy certificate is required to provide "adult entertainment":

> 2.  For a business to legally operate where there is adult entertainment, the business would have to obtain a Certificate of Occupancy (commonly known as a Use and Occupancy permit or U & O). My office issues Certificates of Occupancy for all the businesses that are located in Memphis or the unincorporated areas of Shelby County[,] Tennessee.
>
> 3.  The records of the Office of Construction Code Enforcement have been reviewed, and there is no record of a Certificate of Occupancy for adult entertainment ever being issued for the location at 600-616 Marshall Avenue in Memphis, Tennessee. These records have been researched from the present date back to 1980.

Medlock Affidavit at ¶¶ 2, 3. Further, Mr. Jenkins, the Chief Zoning and Sign Inspector for Memphis and Shelby County Code Enforcement, confirms that lawful provision of "adult entertainment" requires a certificate of use and occupancy:

> A.  If it's [a hypothetical "strip club"] an illegal operation, you know, we'd get involved in it.
>
> Q.  And how would you determine if it's an illegal operation?
>
> A.  Well, they might say it doesn't even have a permit to even be in there to operate, Certificate of Occupancy.

8

Jenkins Deposition at 35. Thus, given all of the above, the Court finds that in order to lawfully provide "adult entertainment," a facility must satisfy both applicable permit requirements and maintain a valid certificate of occupancy for adult use.

Unfortunately, the evidence concerning whether adult use was ever permitted at 600 Marshall is relatively scant. Petitioner submits the affidavit of Dennis Stephen Belski, who states that he was both an employee and a patron of the premises from the mid to late 1970s through the late 1990s, and that during such time the facility offered "adult entertainment," including compensated dancers, and that "[d]uring this time the owner had a dance permit and other permits that allowed these activities." Importantly, the Court notes that Petitioner offers no foundation regarding Mr. Belski's understanding of applicable permit requirements. That is, the Court is given no assurance that Mr. Belski is sufficiently familiar with then applicable permit requirements such that his general assertion that required permits were held should be afforded great deference. Mr. Belski certainly does not elaborate on what type of "dance permit" (compensated or not) or other permits were maintained by the proprietors of 600 Marshall. The City claims that it has "never approved or permitted the illegal use of the facility for adult-type entertainment." Respondent's Memorandum In Opposition To Temporary Injunction at 4. This assertion is bolstered by the Medlock affidavit discussed above. However, Ms. Lili Jackson, the Permits and Licenses Manager for the City, stated in her deposition that she could not find a record of any permits granted to the various enterprises located at 600

9

Marshall prior to 1995, and that if such permits had been issued, the records of those permits likely no longer exist:

> Q. Okay. So as far as we know, in 1982 there could have been a permit that we just don't know about and won't know about. Is that correct?
>
> A. 1982. Yeah, that's true. I mean, I - we are only required to keep them for ten years.
>
> . . .
>
> Q. Okay. So we have no knowledge of what occurred prior to March of 2000 at this location as far as dance permits or beer permits?
>
> A. I do not.

Deposition of Lili Jackson at 17-18. It should be noted, however, that Ms. Jackson's testimony relates only to the records maintained by her office, and therefore does not appear to undermine Mr. Medlock's assertion that he has found no records of an adult use and occupancy certificate dating back to 1980. Thus, in seeking to determine whether any permitted "adult" use of the premises at 600 Marshall predated the zoning change, the Court is left with the self-serving statement of an affiant who simply states that the facility had appropriate permits, without elaborating on what permits were had or maintained year to year, and the City's allegation that any "adult" uses were never permitted. Therefore, the Court is unable to hold, based on the limited record before it, that, as a matter of law, previous occupiers of the premises at 600 Marshall were properly permitted to provide "adult entertainment."

Further, despite the assertion in Belski's affidavit that he observed "adult entertainment" into the late 1990s, Tennessee law places great emphasis on the usage at the immediate point in time

10

of the zoning change. In <u>Toles v. City of Dyersburg</u>, 39 S.W.3d 138 (Tenn. Ct. App. 2001), the Tennessee Court of Appeals rejected the claim of a tavern owner that his use of the tavern should be "grandfathered" because the tavern had been voluntarily closed for approximately five months, during which time the municipality enacted new zoning ordinances which prohibited such an establishment in that zone. In <u>Toles</u>, the owner and operator of the tavern allowed their business and beer permits to lapse while they sought new management for the club. Approximately twenty days later, the new manager applied for a new beer permit but was denied the permit due to "structural deficiencies in the building." <u>Id.</u> at 140. While the new management was engaged in improving the building, the city adopted the zoning changes. The building was approved subsequent to the zoning change, but management was denied the beer permit due to the new zoning ordinances. The owner/operator of the club argued that they held a preexisting non-conforming use of the property entitled to "grandfathering" under state and local law. The Court of Appeals rejected the argument, holding that because no valid business license or beer permit existed at the time of the zoning change, there was nothing to "grandfather." <u>Id.</u> at 141. Thus, despite the operator's manifest intent to continue the operation of the tavern, demonstrated by his application for a new permit prior to the zoning change and his expenditures in improving the building, he was not entitled to "grandfather" the previous legal usage of the tavern.

While there was no business in operation at the time of the zoning change in <u>Toles</u>, and it appears that some form of a business

11

has been in operation at 600 Marshall from the 1970s to just a few months ago, the Court finds the reasoning in Toles helpful in its analysis of the instant matter. The Court has no specific evidence of what uses the building's proprietors were validly permitted to engage in immediately prior to the zoning change in 1993, or whether there was even a functioning business at the moment the zoning changes became effective. Without such evidence, this Court cannot conclude that a valid, permitted use of the facilities matured into a pre-existing non-conforming use after the City's adoption of the 1993 zoning amendment. The Court notes again, though, that the Petitioner's ability to demonstrate a valid, permitted use is perhaps somewhat frustrated by the City's inability to produce records from that time. Despite the inequity suggested by those circumstances, Tennessee law is clear that the burden of proving a valid preexisting and non-conforming use is borne by the proponent of the alleged non-conforming use, in this case Petitioner. Lamar Tennessee, 171 S.W.3d at 836. Accordingly, the Court holds that the Petitioner has not demonstrated a likelihood of success on his claim seeking to have this Court declare that a valid "adult entertainment" usage predated the City's enactment of the 1993 zoning amendments.

Further, were the Court to conclude that such a permitted usage did survive the City's zoning amendments, the Court is not persuaded that such a usage has continued through to the present. The Memphis and Shelby County zoning ordinances provide as follows:

> Abandonment or discontinuance. When a nonconforming use of land or a nonconforming use of part or all of a structure is discontinued or abandoned for a period of

12

> 365 consecutive days (regardless of any reservation of an intent not to abandon and to resume such use), such use shall not thereafter be reestablished or resumed. Any subsequent use or occupancy of such land or structure shall comply with the regulations of the zoning district in which such land or structure is located.

Zoning Ordinances, § 30(B)(6). Thus, the ordinances provide for the lapse of non-conforming uses that are not maintained for one year. Tennessee law requires generally that such an abandonment or discontinuance must be voluntary, that is, there must be an intent to abandon the non-conforming use. See Boles v. City of Chattanooga, 892 S.W.2d 416, 422 (Tenn. Ct. App. 1994). Whatever valid and permitted adult uses survived up to the year 2000, it appears since that time that the proprietor(s) of 600 Marshall intended to abandon any adult usage of the facility. Nathan Rosengarten, the operator at 600 Marshall prior to the Petitioner, clearly did not intend to provide "adult entertainment" at his club. His yearly "Public Dance Hall Permit" applications either left blank or marked "N/A" the spot where the applicant is to indicate whether "adult entertainment" will be provided at the facility. Further, Mr. Rosengarten testified at the injunction hearing that he did not intend to provide "adult entertainment" as he then understood the term. At the hearing Mr. Rosengarten related that his concept of "adult entertainment" was definitively narrow, apparently consisting only of "topless bars." However his affidavit contrasts somewhat with his hearing testimony:

> Since the time I have been associated with the club, the club has on occasion had adult films in booths, fetish parties, gothic parties, male strippers and other performers who would expose genitalia, breasts and do other things as part of their act which I would consider

13

> as adult entertainment. These events occurred at least every two to three months. Often women who frequented the club for the fetish or gothic nights would go topless. This use continued and did not terminate while I was with the location until July 2005.

Affidavit of Nathan Rosengarten at ¶ 3. Perhaps the affidavit reflects Mr. Rosengarten's concept of "adult entertainment" after being made aware how that phrase is defined by ordinance. At any rate, Mr. Rosengarten's testimony and course of conduct clearly indicate that either 1) he did not intend to provide "adult entertainment" or 2) he intended to provide such entertainment unlawfully. Either course of action does great damage to Petitioner's claim that a valid non-conforming use was preserved during the five year period prior to its taking over the operation of 600 Marshall.

It strikes the Court as both incongruous and inequitable to suggest that the City should now be estopped to contest the provision of "adult entertainment" at 600 Marshall where the City has been consistently informed that no such usage would prevail at the facility for the last five years. Petitioner submits affidavits suggesting that the City was aware that "adult entertainment" was being provided, apparently because police officers both patronized and appeared there in their official capacities, however, Tennessee law is clear that lax enforcement of zoning ordinances does not estop the municipality to eventually enforce the ordinances. See <u>Lamar Advertising of Tennessee, Inc. v. City of Knoxville</u>, 905 S.W.2d 175, 177 (Tenn. Ct. App. 1995); <u>Rives</u>, 618 S.W.2d at 506.

14

Additionally, it is not clear from Mr. Rosengarten's testimony that he specifically provided "adult entertainment" under the auspices of the previous incarnations of 600 Marshall. Mr. Rosengarten testified that the last "compensated dance" act performed at the club prior to his taking over in 2000. Mr. Rosengarten further testified that the club featured annual "fetish balls" where apparently some patrons would dress in costumes revealing genitalia or female breasts. Mr. Rosengarten did not indicate that he sponsored any such displays during these "fetish balls." Mr. Rosengarten also testified that occasionally music performers would "get a little crazy," which the Court can only interpret to connote that these performers or patrons might expose themselves or engage in similar behavior. Again, Mr. Rosengarten did not indicate that he or other management sponsored, intended, or directed that such things happen. Rather, he just did not exercise control to prevent them from happening. Mr. Rosengarten also testified regarding the club's weekly "goth" nights, specifically discussing a group of performers referred to as a "suspension team," featuring individuals with various piercings and other anatomical modifications, who would perform an act that might include the presentation of genitalia or the female breast. Mr. Rosengarten testified that the club did endorse and/or compensate the "suspension team" for their performances. Finally, Mr. Rosengarten testified that, as a component of the "fetish balls" and "goth" nights, patrons sometimes viewed adult films in booths at the club. Mr. Rosengarten asserted that the patrons themselves provided the films, and, once again, club management simply failed

15

to exercise control over the display of pornography at the club. From all of the above, it is apparent that, for the most part, the proprietors of the facilities at 600 Marshall simply provided a forum where patrons themselves created the "adult entertainment." Only through its support of the "suspension team" does it appear that the club itself may have attempted to provide "adult entertainment." Perhaps genitalia or female breasts were bared during the performances of the "suspension team," but, considering that Mr. Rosengarten never intended to provide "adult entertainment" and consistently led the City to believe that such entertainment was not provided at his establishment, it would be improvident for this Court to conclude that "adult entertainment" was consistently provided by the proprietors of 600 Marshall during the previous five years. At any rate, the provision of such entertainment was never permitted by the city, either through the grant of a non-compensated "public dance hall" permit based upon the applicant's disclosure that it intends to provide such entertainment or an adult use certificate of use and occupancy, and Mr. Rosengarten specifically stated in his testimony before the Court that he would not have offered such entertainment had he known that it might fall withing the City's definition of "adult entertainment." The Court further notes that the only documentary evidence of "adult entertainment" related to the "suspension team," three Polaroid photographs depicting their act, would only very tenuously come within the City's definition of "adult entertainment." In one of the photographs a female team member is topless, though she has what appears to be electrical tape

16

adhered across her chest obscuring her nipples. Given that the City's "adult entertainment" ordinance forbids the display of the "[f]emale breast below a point immediately above the top of the areola," see Zoning Ordinances at § 2, it is perhaps reasonable to speculate that the tape was applied out of an abundance of caution, albeit ill-informed, that the "suspension team" not cross some perceived line demarcating the sexually charged term "adult entertainment" and mere performance art. Such a reluctance to feature completely nude performers would be consistent with Mr. Rosengarten's testimony that he never intended to provide "adult entertainment" in his club. Therefore, considering the evidence as a whole, this Court cannot conclude that, even if some form of non-conforming "adult entertainment" usage survived the 1993 zoning amendments, such a usage was not intentionally abandoned by previous operators of the facilities at 600 Marshall, as evidenced by Mr. Rosengarten's hearing testimony and course of conduct. Accordingly, and for all the reasons given above, Petitioner has not demonstrated a substantial likelihood of success on the merits of his claims for declaratory relief.

### B. Constitutional Claims

Petitioner appears to raise the following constitutional claims in its petition: 1) that the revocation and denial of the dance permit constitutes a compensable taking; 2) suppression of protected First Amendment expression; and 3) violations of substantive and procedural due process rights pursuant to the Fourteenth Amendment. However, these claims are not succinctly presented in the petition. Rather, the Court's divination of these

17

claims stems from Petitioner's use of key words and phrases like "taking for which Petitioner is entitled to compensation" see Petition at ¶ 26, "inappropriate and unlawful suppression of that expression," see Petition at ¶ 27, "created a prior restraint of Petitioner's rights," see Petition at ¶ 36, and "[t]he procedure of revocation and thereafter providing Petitioner an appeal hearing violates the Petitioner's rights by taking a property right without due process of law," see Petition at ¶ 29. In all of the instances above, the allegations are conclusory at best, and are not supported with substantive legal argument pursuant to applicable constitutional doctrine. Indeed, Petitioner's brief in support of its request for injunctive relief seems largely to focus on the merits of the state law issues discussed above, at the expense of reasoned and thorough analysis of the constitutional issues which are at least suggested by the petition. The allegations of Petitioner's complaint raise substantial constitutional issues which demand principled resolution. Petitioner, however, in its memorandum in support of injunctive relief has merely cited two cases, Elrod v. Burns, 427 U.S. 347, 373 (1976), and G & V Lounge, Inc. v. Michigan Liquor Control Comm'n, 23 F.3d 1071 (6th Cir. 1994), both in support of its argument that "restriction of a [F]irst [A]mendment right is *per se* irreparable harm." While that point is readily acknowledged by the Court to be true, that alone cannot suffice to demonstrate a likelihood of success on the merits of the weighty constitutional claims suggested by the petition. The thicket raised by First Amendment, takings, and due process claims require more than conclusory allegations of violations in

18

order for this Court to award the extraordinary remedy of a preliminary injunction barring the enforcement of a city ordinance on constitutional grounds. Accordingly, the Court finds that Petitioner has failed to demonstrate a likelihood of success on the merits of its various constitutional claims.

## IV. CONCLUSION

For all the reasons given above, the Court finds that Petitioner has not demonstrated a likelihood of success on the merits of the claims raised by its Petition. Accordingly, the Court DENIES Petitioner's request for preliminary injunctive relief.

IT IS SO ORDERED this 30th day of December, 2005.

BERNICE BOUIE DONALD
UNITED STATES DISTRICT JUDGE

19

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 20 in case 2:05-CV-02865 was distributed by fax, mail, or direct printing on December 30, 2005 to the parties listed.

---

Edward M. Bearman
BRANSON & BEARMAN
780 Ridge Lake Blvd.
Ste. 202
Memphis, TN 38120

Kenny W. Armstrong
CHANCERY COURT, 30TH JUDICIAL DISTRICT
140 Adams Ave.
Rm. 308
Memphis, TN 38103

Michael W. Hughes
CITY ATTORNEY'S OFFICE-Memphis
125 N. Main Street
Ste. 314
Memphis, TN 38103

Saul C. Belz
GLANKLER BROWN
One Commerce Sq.
Ste. 1700
Memphis, TN 38103

J. Michael Fletcher
CITY ATTORNEY'S OFFICE-Memphis
125 N. Main Street
Ste. 314
Memphis, TN 38103

Monica A. Wharton
GLANKLER BROWN
One Commerce Sq.
Ste. 1700
Memphis, TN 38103

Honorable Bernice Donald
US DISTRICT COURT